DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL LIZZI,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-4355

[July 29, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Lawrence Mirman, Judge; L.T. Case No. 432014CA001131A.

Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.

No appearance for appellee.

WARNER, J.

Appellant challenges an order allowing a medical facility to involuntarily treat him with psychiatric medication. The order allowed the facility to treat appellant with twenty different drugs. Because the record contains no competent substantial evidence that the administration of the drugs, except for two, was essential to the appellant's care, we reverse the order authorizing treatment.

Appellant was admitted to Treasure Coast Forensic Treatment Center ("the facility") after having been found not guilty by reason of insanity in a criminal proceeding. He had been diagnosed with "[b]ipolar disorder with psychotic features," and his symptoms included "rapid speech, . . . pressured speech sometimes, delusional grandiose delusions, . . . [and] impulsive control issues," according to appellant's treating psychiatrist. After appellant refused to take medications, the facility filed a petition requesting authorization to administer drugs to treat appellant. The list contained twenty different drugs:

[1] Aripiprazole 5mg-30 mg PO/IM, [2] Fluphenazine 5mg-40mg PO/IM, [3] Haloperidol 5mg-40mg PO/IM, [4] Olanzapine 2.5mg-30mg PO/IM, [5] Perphenazine 2mg-64mg PO, [6] Quetiapine 25mg-800mg PO, [7] Risperidone 0.25mg-16mg PO, [8] **Saphris 5mg-20mg SL**, [9] Thioridazine 50mg-800mg PO, [10] Latuda 6mg-160mg PO, [11] Ziprasidone 20mg-240mg PO/IM, [12] Clonazepam O.5mg-16mg PO, [13] Lorazepam 0.5mg-10mg PO/IM, [14] Carbamazepine 100mg-1600mg PO, [15] Lamotrigine 25mg-200mg PO, [16] **Lithium 150mg-1800mg PO**, [17] Valproic Acid 250mg-3000mg PO; [18] Proposed IM Medicine: Fluphenazine Decanoate 25mg-100mg IM every 2-4 weeks, [19] Benadryl 25mg-100mg PO/IM, [20] Vistaril 25mg-100mg PO/IM; tests as necessary for treatment including medical test to monitor for side effects including, but not limited to drawing blood and any others that identified in any facts and comparisons, which serves as the official compendium for psychotropic medication usage for FDCD, and will be administered at the lowest and possible dose [sic] to achieve a therapeutic response in accordance with CF-155-1, which governs the use of psychotropic medications in state institution [sic], as well as, appropriate FL statutes governing the practice of medicine.

(Emphasis supplied.) The petition attached two supporting opinions from psychiatrists.

At the magistrate hearing on the petition, the appellant's treating psychiatrist testified that medication was essential to the appellant's care and to accomplish the goal of allowing him to "step down" to a civil hospital. Appellant was currently taking Saphris, but the dose he was taking was inadequate to control his symptoms of yelling at staff in the facility and other disruptive behavior.

The psychiatrist and the other members of appellant's multi-disciplinary treatment team had agreed to a plan of treatment, including the drugs on the list, but appellant had refused treatment. Appellant desired to continue with only the Saphris, as he was concerned with the side effects of the other medications. The psychiatrist testified that he would first administer Lithium as well as the current Saphris dose. Regarding the other medications described in the petition, the administrator testified that he would not use them, unless appellant had an adverse reaction to the Lithium. The other medications would be used only as a "last case scenario," if they ran into a lot of problems. He admitted that when Lithium had been administered to appellant in the

2

past he had had tremors as an adverse reaction, but the psychiatrist thought they could keep the tremors under control. He opined that without treatment appellant would relapse, and that everything the treatment team was recommending was medically necessary for appellant's care and treatment.

After the psychiatrist testified, appellant addressed the magistrate in a rambling fashion. First, he explained his conduct toward staff. Then, he objected to being treated with Lithium because of its side effects.

The magistrate subsequently issued an order granting the petition, which found: "Based upon the clear and convincing evidence during this hearing, including the testimony of [the psychiatrist], the Forensic Client is in immediate need of psychiatric medication and treatment pursuant to Section 916.107(3)(a), Florida Statutes (2013)." The form order noted the magistrate had "considered the following factors in making its determination: a. The expressed preference of the Forensic Client regarding treatment; b. The probability of adverse side effects; c. The prognosis without treatment; and d. The prognosis with treatment." The magistrate authorized the facility to treat appellant with medication as provided in the petition for a period of ninety days. After a circuit judge entered an order adopting the magistrate's recommendation, appellant timely appealed.

Chapter 916, the Forensic Client Services Act, establishes the authority for treatment of persons adjudicated guilty by reason of insanity. Section 916.105, Florida Statutes (2014), provides:

> (2) It is the intent of the Legislature that treatment . . . programs for defendants who . . . are involuntarily committed to the department or agency, and who are still under the jurisdiction of the committing court, be provided in a manner . . . which ensures the rights of the defendants as provided in this chapter.

Section 916.107(3), Florida Statutes (2014), allows a facility to involuntarily treat a patient if the facility meets certain requirements and obtains a court order:

> (3) Right to express and informed consent.--
>
> (a) A forensic client shall be asked to give express and informed written consent for treatment. If a client refuses such treatment as is deemed necessary and essential by the

3

client's multidisciplinary treatment team for the appropriate care of the client, such treatment may be provided under the following circumstances:

. . .

2. In a situation other than an emergency situation, the administrator or designee of the facility shall petition the court for an order authorizing necessary and essential treatment for the client. The order shall allow such treatment for a period not to exceed 90 days . . . .

3. At the hearing on the issue of whether the court should enter an order authorizing treatment for which a client was unable to or refused to give express and informed consent, the court shall determine by clear and convincing evidence that the client has mental illness, intellectual disability, or autism, that the treatment not consented to is essential to the care of the client, and that the treatment not consented to is not experimental and does not present an unreasonable risk of serious, hazardous, or irreversible side effects. In arriving at the substitute judgment decision, the court must consider at least the following factors:

> a. The client's expressed preference regarding treatment;
> b. The probability of adverse side effects;
> c. The prognosis without treatment; and
> d. The prognosis with treatment.

To affirm an order entered under this section, "the record [must] contain evidence 'that the treatment is deemed necessary by the patient's multidisciplinary team, that the patient has refused to give express and informed consent as defined in the statute, and that the trial court has considered at least the four factors specified in clauses a-d of section 916.107(3)(a) 3.'" *Louisma v. State*, 78 So. 3d 50, 52 (Fla. 4th DCA 2012) (quoting *Dinardo v. State*, 742 So. 2d 287, 289 (Fla. 1st DCA 1998)). "On appellate review of an order authorizing involuntary psychotropic treatment, the record must contain competent substantial evidence to substantiate compliance with section 916.107, Florida Statutes." *Smith v. State*, 145 So. 3d 189, 191 (Fla. 4th DCA 2014); *see also Rogers v. State*, 138 So. 3d 1160, 1161-62 (Fla. 4th DCA 2014).

4

Appellant argues that the state established his need for only Lithium, not the remaining drugs listed in the petition. He also contends that, contrary to section 916.107(3)(a), Florida Statutes (2014), and section 916.106(8), Florida Statutes (2014), the facility did not give him "the opportunity to prove express and informed consent to any medication other than Lithium or Saphris."

While appellant's psychiatrist testified to the use of Lithium to treat appellant, he specifically stated that he would not use the remaining medications unless they ran into problems with the Lithium. He did not address specifically any of the other medications or their potential side effects. The psychiatrist did not testify to appellant's prognosis with treatment by the other drugs or without them, because he was not intending to use them. In substance, therefore, he testified that the other medications were *not* necessary to appellant's care at the time of the hearing. On this record, there was simply no evidence as to the medical necessity of the drugs other than Lithium and Saphris, and the court did not have any evidence to support findings on the statutory factors which the court must consider to authorize involuntary treatment.

Section 916.107(3)(a), Florida Statutes (2014), requires the forensic client to "be asked to give express and informed written consent for treatment." Only when a client refuses treatment does the facility petition for a court order under section 916.107(3)(a)2., Florida Statutes (2014). *See Louisma*, 78 So. 3d at 52 (the record must "contain evidence . . . that the patient has refused to give express and informed consent as defined in the statute"). We do not think that the approval of a wide variety of drugs, which may or may not be used, comports with the intent of the law, as section 916.105(2), Florida Statutes (2014), states that the legislative intent is to provide treatment in a manner to ensure a defendant's rights. If such a blanket approval of a variety of treatments were authorized, whether or not the facility intends to use them, nothing would prevent a facility from petitioning the court, the moment a forensic client enters a facility, to authorize a wide range of treatments as "medically necessary," and then treating the client in any manner it wishes within a wide range of treatment options, thus ignoring the client's right to refuse specific medical treatments.

The involuntary treatment orders provide authority for only ninety days. With this short period, the facility's treatment plan should be narrowed to those drugs which it actually intends to use. Then it must provide the necessary information to the magistrate to explain why each drug is essential to the treatment of the client as well as an analysis of its side effects.

If within the ninety day period "there is immediate danger to the safety of the client or others," the statute provides for emergency treatment for 48 hours on the authorization of a physician, even without client approval. § 916.107(3)(a)1., Fla. Stat. (2014). This allows for situations where additional drugs may be needed immediately to protect the client or others from danger, although the client has not consented to those drugs and court approval has not been obtained. Thus, the statute contemplates that any change in treatment should require the consent of the client or court authorization.

We reverse the order authorizing treatment to the extent that it allows treatment of appellant with drugs other than Lithium and Saphris. We further direct that future petitions, hearings and orders authorizing involuntary treatment comply with this opinion.

LEVINE and CONNER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

6